My name is Michael Loomer. I represent the Plaintiff Appellant Ashik Soomro. The facts of this case, the relevant facts regarding Mr. Soomro's arrest are quite simple. On October 11, 2011, he was driving a taxi cab, a yellow cab. He was heading westbound on West 57th Street. He went through the intersection of 57th Street and 5th Avenue. He had a passenger in his car who wanted to get out. Defendant Timothy Krause was a police officer on duty doing traffic control. That morning, he instructed my client not to discharge his passenger and to proceed down the block. As my client proceeded down the block and slowed to merge into another lane of traffic, his passenger, who wanted to get out of the cab, began to get out of the cab. My client reasonably stopped the cab to let her out so she wouldn't get hurt. Officer Krause approached the cab from the rear passenger side and directed him to move and to comply with his original instruction, which was to keep on driving because he was blocking traffic. And not discharge his passenger? I don't think so. I think what he said was basically move, but the passenger was getting out of the cab. And Officer Krause has testified that essentially the passenger was out of the cab when he got there. And the testimony from my client was that she threw money down on the seat and just started getting out. When he slowed to merge, she started getting out. Can I just jump ahead to the procedural aspect of this? Sure. It seems that when Judge Cote got the case and reopened the consideration summary judgment, it was just going to be on qualified immunity. And your papers look like that from both sides. Right? Were you surprised when she revisited the probable cause for the malicious prosecution and said, I just don't agree with your interpretation of the statute and you haven't raised a genuine disputed material fact on it? I was quite surprised. Originally what had happened was in the motions in Limine, which were submitted while the case was still assigned to Judge Swain, defense counsel raised this issue of qualified immunity, and they framed it as kind of a weird hybrid of a motion for reconsideration, which was difficult because it was plainly untimely, and a sort of oops, can we make this now sort of motion for qualified immunity. But you didn't object to that. Oh, no, we did. We absolutely objected to that. Objected to looking at qualified immunity? I didn't see that in the discussion at the status conference. You seemed to go along with that. I didn't think I had. No, I'm trying to remember. I don't know, Your Honor. I'll defer to whatever the record says. What I do know. It's always a good thing to do. What I would say is in our motion in Limine response, I absolutely objected to it as untimely, and Judge Cote, I believe at the outset of the status conference, said it was not a proper motion for reconsideration. It was untimely, et cetera. Judge Cote then said, in sum and substance, that she wasn't convinced that Judge Swain had properly parsed the language of the Penal Law Statute 120.05 subsection 3, and so she would hear argument on that. And so you had an opportunity for argument. Well, that was, and so that was essentially, that was what the papers were. I'm sorry. That was what the papers were. I believe so. What's that? Oh, I'm sorry. The defendant, what I consider their second summary judgment motion, the motion before Judge Cote as opposed to the prior one. So Judge Cote did not rule based on any of the arguments in the motion in Limine. She essentially then invites this rebriefing. The defendants rebriefed no new 56-1 statement. Instead, they rely entirely on the fact, and you can see it in the special appendix or the supplemental appendix, page 8, in the defendant's brief to Judge Cote. They quote specifically from the facts as outlined by Judge Swain. These are the facts of the case. So we come back to this sort of procedural posture, which is qualified immunity hasn't really been addressed, and now you have this argument. And I do think the defendants didn't simply make a qualified immunity argument. They argued full-throated against both the Malpras and the fair trial argument. And I do think that's how it was ultimately argued. I don't know how it was argued. I'm trying to figure out what Judge Cote and what Judge Swain disagreed about, and it seems as if Judge Cote was saying the misrepresentation in the statement about being half inside the cab is irrelevant because all the statute requires is intent to interfere with a police officer and you don't need to intend hurting that police officer. And so that whether he just had his arm in the cab or the whole half his body was in the cab doesn't really matter. But it seemed like from the beginning your view was he didn't intend to interfere with the police officer either. I mean, in other words, it's relevant to whether he would have noticed the police officer in the cab if he's halfway in the cab, and so maybe he's lying about it, didn't want to interfere with this police officer. But your view seems to be he never intended to interfere either, right? Absolutely, Judge. And I think in this case it's the same evidence. In other words, Judge Swain, and this is where Judge Cote did not do what you would normally, I think, in my limited experience with this, expect when you are essentially reversing the district court's prior order, which is to say either these are the new facts or this is the change in the law or the prior decision was so erroneous as to really require an intervention. And that doesn't happen. There's an acknowledgment of the prior order and then simply a kind of de novo ruling without any acknowledgment of the prior holding. But in actuality, Judge Swain was very clear. In her ruling, she adopted the city's interpretation of the statute, which is, I think correctly, that assault under 120.05 section 3 requires an intent to interfere, that one way or another results in a physical injury. You don't have to intend to injure, but you have to intend to interfere. That's the mens rea element. And in this case, and that's what Judge Swain says. She, that's the same exact request or requested reading from defendants is what Judge Swain gave them and exactly what Judge Cote says should be applied. So I, I don't, I think Judge Cote's, Judge Cote adopted the same interpretation as Judge Swain, but then comes out differently, and I would say erroneously. I'm almost out of time. If I could just have an extra minute or two on this point. Roberts. You are out of time, but yes, you may have an extra minute. Thank you. I'm sorry. Thank you, Your Honor. In this case, you have an officer telling a cab driver to drive. The cab driver drives. The officer, I have still yet to figure out in my head conclusively how, gets snagged in the rear window of the car and is pulled along. He runs alongside the car, as you can see in the video, and then gets unentangled, tumbles to the ground, and is injured. My client drives to the corner, stops at a red light, gets arrested. And the fundamental question is, did my client have any idea? Was it reasonable for them to believe my client had an idea that he was in the car? Now, let me just get rid of the false arrest claim really quickly. What Judge Swain said was because of the discharge of the passenger, there was independent probable cause to arrest for the violation of some traffic law. Whatever my personal thoughts are about that extension of Devenpeck, I didn't want to raise that issue here. Secondarily, she found that at least based on first observations, maybe there was PC for the arrest. I think that's mistaken, but given the other reason for getting rid of the false arrest claim, I didn't raise it. But the fundamental issue here is, was my client aware that the officer was there? That's evidence both of intent to interfere and intent to injure. At the same time, they're the same thing. If he doesn't know that the officer's attached to the car, then he thinks he's complying. He thinks he's doing exactly what he was told to do, and there's no mens rea. If he thinks the officer's in the car, then he knows he's interfering with him. And then, of course, any reasonable adult should conclude that he's putting this person at real risk of injury. So it's the same — it happens to be the same thing because of the facts of the case. It just — by statute, both judges agreed as to what it was. And what I would say in closing on that point, Your Honor, is — Kennedy, are you asking about the fair trial claim? Sure. That is, do you agree that it's gone after the Supreme Court's decision in Manuel? No, Judge, I don't. I don't. And I don't think this is the case. You know, Manuel came down after, I believe, the decision from Judge Cote issued. It really was not — it was presented in the scope of a paragraph or so by defendants. I don't — I'm not comfortable arguing that at full length, but I would say, if the Supreme Court intended to get rid of the fair trial claim, it would have done so. And I don't think that was the issue before it in Manuel. What you have is — Okay. I'm sorry. So that's how I would leave that, Your Honor. Okay. And you've reserved three minutes for me. Yes. And I'll raise my other points at that time, Your Honor. Ms. Greaves. Good morning, Your Honors. Is that podium okay for you, or would you like it up a little bit? I think it's fine. Okay. Very good. I just want to start briefly by responding to the notice question that Your Honors asked my adversary. It's clear, going back to pages 36 and 37 of the joint appendix, that at the status conference before Judge Cote, the parties discussed at length the question of how the underlying penal statute should be constructed. Judge Cote also made clear that it was unclear at that time whether the parties had really spent enough time parsing that issue and whether Judge Swain's 2006 opinion had actually parsed that issue. So to the extent— But she just permitted unqualified immunity, right? She said she rejected it being a motion for reconsideration because it's untimely. She said you can file new briefs on qualified immunity on malicious prosecution because that was never addressed by Judge Swain. Is that right? Is that fair to say? Well, I don't know if it's entirely fair to say. Certainly, the Court did reject our attempt to file a motion for reconsideration. But the Court was perplexed as to how to instruct a jury or how to fashion jury instructions and how to respond to certain motions in limine that both sides—issues regarding motions in limine that both sides had raised because the construction of that penal law provision remained unclear. So the Court—and I don't want to spend my time finding the exact reference just yet—but the Court made clear that the parties could either allow Judge Cote to go back and re-review the summary judgment briefing that had already happened and stand on those papers or submit additional documents. And because— But only on the issue of qualified immunity. On the issue of qualified immunity and the proper construction of intent under Penal Law 120-5-3. Saturated issue. That's correct. And so, again, just to—so the question about notice, I think, is answered by that extensive discussion that the Court was going to potentially reconsider some aspects of the prior order. And certainly, Mr. Somerville had an opportunity and did take the opportunity to brief any issue that he wanted to raise. But turning—and, again, there is no reason why, since Judge Cote was correcting an error in the prior decision with respect to the malicious prosecution claim and the fair trial claims, there's no reason why Judge Cote needed to allow an error to stand. And that error—and this is going to another question that Your Honors posed to my adversary—was where did the judges actually disagree? And the specific issue is on what Mr. Somerville needed to show in order to prove that probable cause was vitiated. Now, Mr. Loomer just said that the 2016 opinion found that there was probable cause for the—Mr. Somerville's arrest in connection with the traffic violation. It did find that. But Judge Swain went on to also find that there was probable cause for his arrest, or at least arguable probable cause, with respect to the second-degree assault charge. And it's in two parts of that, pages 24 and 25 of the Joint Appendix, as well as page 27, when the Court says, again, that it could not find as a matter of law that probable cause was lacking for the prosecution on this assault charge. So once we're in the—in the zone of having at least arguable probable cause for the assault, Mr. Somerville had the burden of coming forward with some proof that in those 12 hours between the time of this dramatic dragging incident and the time that Officer Loomer signed the criminal complaint, that in that time period, somehow those officers discovered an intervening fact that proved the groundless nature of the second-degree assault charge. And he failed to do so for three reasons. First, instead of offering any proof, he offered speculation about what was in everyone's mind. The officers must have thought that this wasn't enough. There was a statement, though, a sworn statement that Loomer said Krauss told him, and he didn't observe this himself. He said, this is what was told me by Krauss when he filed that statement with the District Attorney's Office. Loomer told him, I was halfway in the cat. Krauss never said he saw that. And then later on, and so that's where the malicious prosecution comes in as opposed to false arrest, because it's after the arrest. And then later on, it seems to be undisputed that that was not true. Even Krauss said that's not true. Again, respectfully, Your Honor, I don't know, just going back. The statement that Mr. Somerville has pointed to was a very brief and general description, one of three comments that Officer Loomer made. And I just want to note them in totality. In that criminal complaint that Officer Loomer signed, he said half of Officer Krauss's body was still in said taxi, statement one. He said Krauss told me that. He didn't say I observed that, right? That may be true. His deponent, Loomer, states the deponent is informed by Officer Krauss the following three things, that the defendant drove off and then that half of his body was in the taxi. Loomer never observed that himself. That may be true, Your Honor. But I don't think it's material here because the number one concern of the court was, is this false? And again, take it in context, a colloquial expression like half of Krauss's body was in the taxi, he was hanging out of the taxi and unable to get out, and that he fell out and rolled onto the ground causing injuries. Taken in total, that is not demonstrably false. But he said in his deposition it's not true, right? A-20. In his deposition in the incident of action, Krauss acknowledged it was not true that half his body was caught in the taxi cab and the video didn't show it either. The video is, there are different parts of Officer Krauss's body that are stuck in the taxi as he's dragged along. At one point, it seems to be part of his arm, I believe his right arm, and he has to dislodge himself. But again, that is reason number one, because there is tremendous amount of speculation about what was in the officer's mind and what the officer may have been thinking about in those 12 hours. Not a fact, again, that was discovered during that time. Reason two, this court was clear in Dufour to show that fine-tuned assessments about what evidence, fine-tuned assessments of evidence that might be relevant at trial are irrelevant when we're looking at a question of probable cause. And I raise that here because Mr. Somer's argument rises and falls on the contention that the officers must have believed that some lesser portion of Officer Krauss's body, that that evidence would not have been enough to sustain the charge. And that is not the kind of fine-tuned assessment that's relevant here. And the third, and I think very important, is that nothing, whether it was an arm or a pinky, nothing here could show that the second-degree assault charge was groundless. Now, it may be that Mr. Somer has or would have had, had this case really gone to a full trial, a number of issues to raise in his defense with regard to mens rea. Did he truly mean to interfere with Officer Krauss's duties? But again, going on down to or up to, I didn't even know you were in. I didn't even know the car had caught you up, you know, whether by your arm or your torso or whatever, right? All of those arguments or all of those issues he could bring out in his testimony in a criminal proceeding. But again, when we're looking here at both whether there was probable cause, which both judges found, and whether there was some fact discovered to vitiate probable cause, the objective facts are what control, and objective facts is viewed from the position of the officers, that Mr. Somer was told not to stop his taxi, that he did stop his taxi, that an officer approached him after that violation, communicated something. It may very well be that Mr. Somer misunderstood that communication. But again, that's subjective speculation about what was in Mr. Somer's mind. Objectively, he was signaled to move his car. He drove away at a faster speed. At one, he initially described, he described his initial speed as crawling, and later at his deposition admitted that he drove away faster. So he drove away faster, and in the process injured an officer. Any objectable, any reasonable officer looking at those objective facts could find that the second-degree assault charge could be sustained against him. And I see my time is running out, so I want to briefly just turn to denial of a fair trial. This Court could affirm on qualified immunity grounds, as we briefed to the Court below, and as this Court has made clear, including in Dufour recently, qualified immunity protects all but plainly incompetent in knowing violations of the law. And using a colloquial expression, perhaps imprecise, is not the kind of unconstitutional falsehood that would make, render qualified immunity inapplicable. Say that one more time. I'll try. No, I apologize. I was sort of, I was thinking about that, but if you would just repeat what you said. You don't. Officer Lemore's use of an imprecise and colloquial term like half-in is not an unconstitutional falsehood, but this Court can also squarely affirm on the grounds that are articulated in the opinion on appeal. The district court correctly found that the amount of the officer's body that was stuck in the taxi was not likely to influence a jury, given the intent that was, intent to interfere, that really is the subject of the underlying criminal charge. And I just want to very quickly note that, again, we do not believe that this is demonstrably false, and certainly, given the way that the Court has constructed the requirements for proving fabrication in Savino and Fapiano, Mr. Somers not his burden of, met his burden of proving that it's false and fabricated. And the final point is about malice. Because since we are in the zone of having probable cause, or at least arguable probable cause here for malicious, for the underlying prosecution, he has made no showing. He's not entitled to the automatic inference of malice that he would need to show to sustain his denial of fair trial claim. I guess, I guess Officer Krauss must have thought he told the plaintiff to stop and stay there. Otherwise, he wouldn't have put his arm in the back. At his deposition, Officer Krauss testified that he was signaling for Mr. Somers to move to, I guess, the curb adjacent lane, again, to pull over, so he could come over and issue a ticket. And that a reasonable officer, like Officer Krauss or Lamour, assumed that Mr. Somers was driving away to avoid receiving a moving violation. If there's nothing else, thank you, Your Honors. Roberts. Thank you very much. Mr. Loomer, you've reserved three minutes. Three minutes. Very quickly, just procedurally, when this case went to Judge Swain and again to Judge Cote, it was on a summary judgment motion. So all disputed facts should be resolved in my client's favor, all inferences drawn in his behalf. But there's that interchange in front of Judge Cote where you're – everybody is talking about how we interpret the statute or how the statute is to be interpreted, right? Yes. I say this only for this reason, Judge, which is my client says when the officer comes to his car that he bangs on the roof of the car, and my client hears that, having already been told by the officer a few seconds earlier, get going, that to him means go, because, you know, he is in the second lane of traffic on West 57th Street at 10 or 11 in the morning. So he goes. But what your client thinks – would you agree that what your client thinks is not relevant to whether there was probable cause to arrest him at the time for an observed violation? I would say what none of the parties thought was particularly relevant. The subjective – the subjective thoughts of the officers isn't important either,  I would say it's the objective facts as they appeared, not the objective facts. So we throw out what your guy thought, and we throw out what the officer thought, and we look at – No. Not the thinking. The action. The banging. Yes. The thinking. Well, what I – we throw out the thinking, yes, I agree, Judge. All right. Thank you. But with respect to the banging on the car and the telling him to go, no, that I would say factually has to be assumed to be true in resolving a summary judgment motion, because that's my client's testimony as to what happened, not his interpretation of what it meant, but whether or not that's factually the objective facts to be assumed for the purpose of disposing of the motion. I just want to talk about this very quickly, this qualified immunity thing for a fair trial. The fundamental issue here is whether or not the officers misled or fabricated evidence, misstated evidence to the DA knowingly, knowingly being the operative word here, and I don't see how really in a fair trial context you get qualified immunity if you're knowingly misleading a prosecutor. And fundamentally … Who was the arresting officer here? That would be Officer Lamore. Timothy Lamore. Right. James Lamore was the officer. Timothy Krause was the officer involved. Lamore was his partner who had been standing on the other side of the street. Right. But Officer Krause has stated in his deposition that he also spoke with prosecutors and was – gave the consistent story to them. My point here is that if in fact there's evidence that an officer is misleading or being incomplete or whatever terminology you want with a prosecutor, no reasonable police officer could think that sort of conduct is reasonable, which is different than saying I thought what I saw was reasonable. That goes to liability. But to qualified immunity, the idea that what you're doing, even if it's a constitutional violation, you could reasonably think was okay, well, nobody could think it was okay to mislead a prosecutor. I mean, that – who would – that's just not a reasonable thing. So it comes down to really whether half in and my arm was caught is misleading. Well, distinction between those two is misleading. Well, I think you look at the – you know. I mean, do I have the nub of the argument right? Absolutely, Judge. Okay. I think words matter, you know. I mean, we're at a stage now where people in important positions. One wonders these days. After two hours of argument, we start to wonder whether words matter. Well, in theory. In theory, they do. And it's not just that this is what he told the prosecutors. It's that the prosecutors put it in the criminal complaint precisely because this description of somebody who's half in the cab creates a visual impression where my client had to know, right? That would satisfy the mens rea, whether it's to interfere or to injure. Either way, my client – no reasonable person could be driving a cab with a human being stuck half in the cab and not know. The idea that that's just some conversational thing and – but that's just – that's not a reasonable way to avoid the words you choose to use when you describe things to prosecutors and then sign off yourself on a criminal complaint. I don't think that's a valid defense. And if I'm – Thank you very much. Thank you very much, Your Honors. Thank you. Thank you both. We'll reserve decision.